IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID WEBSTER,

    Plaintiff,

v.

ELECTRONIC DATA SYSTEMS CORP.
and A.T. KEARNEY, INC.,

    Defendants.

Case No. 03 C 3002

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff David Webster (hereinafter, "Plaintiff") filed a four-count complaint for breach of contract (Counts I and IV), unjust enrichment (Count II), and promissory estoppel (Count III). Before the Court are Defendants' Motions to Strike, Defendants' Motion for Summary Judgment, and Plaintiff's Motion for Partial Summary Judgment on Counts I and IV. The Court does not specifically cite to the record because a large part of it was filed under seal.

### I. BACKGROUND

Plaintiff is an attorney with more than twenty-five years of experience. A.T. Kearney, Inc. (hereinafter, "ATK"), a management consulting company, hired Plaintiff as General Counsel in March 1994. On August 1, 1995, Plaintiff was elected Vice President of ATK. In 1995, Defendant Electronic Data Systems Corp. (hereinafter, "EDS") acquired ATK's stock and became ATK's parent company.

On August 31, 1995, Plaintiff entered into a written employment agreement with ATK (the "Employment Agreement"). EDS was not a party

to the Employment Agreement, but was a third-party beneficiary. The Employment Agreement provided that Plaintiff would be paid a base salary and would be "eligible to participate in the Company's performance compensation arrangements, as may be in effect from time to time." Plaintiff received a base salary of $322,500 in 2001. It is undisputed that prior to 2001, Plaintiff was eligible to participate in ATK's Officer Bonus Plan (the "OBP"). The OBP did not pay a bonus to participants in 2000 or 2001, and Plaintiff did not receive a bonus in 2000.

In April 2001, EDS selected and invited Plaintiff and nine other ATK executives to participate in the EDS 2001 Executive Bonus Plan (the "EBP"), along with 174 EDS executives. The EBP was an EDS plan that was "designed to tie a significant portion of the executives' annual compensation to the company's performance as well as the executive's contribution to that performance." It was effective from January 1 to December 31, 2001.

Prior to electing to participate in the EBP, Plaintiff received the EBP Description and Guidelines (the "Description"), which explained the 2001 EBP. Plaintiff admits that he read the Description. The Description states that executives may not participate in any other EDS or ATK incentive, bonus, or commission plan while participating in the EBP. It is a two-step approach, with step one relating to the company's performance and step two relating to EDS' evaluation of the participant's performance and contribution. EDS also explains that bonuses will be calculated based on a target

bonus amount provided to each individual by EDS (Plaintiff's target was $225,750), EDS' diluted earnings per share, EDS' return on net assets ("RONA"), and the individual's performance. The Description explains that the EDS is a *discretionary* plan:

> The basis for determining eligibility, participation in the plan, method of calculating award payments pursuant to the plan, and *all other terms*, conditions and aspects of the EBP *or its application* to particular participants are determined by the CBC *in its sole discretion and may be changed by the CBC or its designee(s) at any time and for any reason the CBC deems appropriate.*

(emphasis added). It also contains the following disclaimer:

> This publication is only intended as a guideline. None of the information . . . is intended to give special rights or privileges to specific individual . . . these procedures do not constitute an employment contract . . . EDS retains the right to change, modify, suspend, interpret, or eliminate any provision in this publication, at any time, with or without notice.

In order to participate in the EBP, Plaintiff was required to read and sign an acknowledgment form (the "Acknowledgment") that stated:

> I acknowledge I . . . agree to all of the EBP terms and conditions. I understand that the EBP is a discretionary plan, future participation is not guaranteed . . . participation in EBP does not constitute an acquired right nor any guaranteed of future employment with EDS or any of its affiliates.

Plaintiff signed and returned the Acknowledgment on September 7, 2001. It is undisputed that Plaintiff participated in the EBP for the 2001 term and was employed on the date that bonuses were paid.

On November 16, 2001, ATK's Chief Executive Officer (the "CEO") Dietmar Ostermann informed Webster that ATK executives participating in the EBP would not receive a 2002 salary increase because EBP

bonuses would likely result in an overall bonus of more than 60% of the assigned targets.

On December 4, 2001, EDS' Compensation and Benefits Committee approved a resolution to delegate to EDS' CEO Dick Brown the authority to approve the 2001 EBP bonus awards. The minutes of the meeting reflect the following delegation:

> [T]here is hereby delegated to the Chief Executive Officer the authority with respect to individual awards under the EBP . . . to reduce or increase such awards or any portion of such awards below or above the levels contemplated by the EBP if (1) the Chief Executive Officer determines that such a variation from the terms of the EBP is appropriate with reference to a particular individual in light of unusual or special circumstances; and (2) no such increase shall result in an increase to the total amount of the bonus pool under the EBP.

On January 25, 2002, Ostermann notified Plaintiff in a memorandum that he decided that no bonuses would be paid under the EBP to him or eight of the nine other ATK executives participating in the plan. He indicated that he would try to acquire EDS stock options for these ATK officers. The only ATK officer who received a bonus worked for part of the year for ATK and part of the year for EDS. Ostermann later testified that Brown, his superior, actually made the decision not to pay bonuses.

Brown testified that he himself made the decision to deny the bonuses after consultation with Ostermann and others. Brown testified that one factor in this decision was ATK's poor financial performance in 2001. Another factor was that the other ATK officers from the OBP also were denied bonuses, as was Ostermann.

Plaintiff did not receive a bonus in 2001. The OBP participants did not receive a bonus in 2001. Ostermann did not receive a bonus in 2001. Plaintiff was subsequently offered a stock option by EDS, but refused to sign the requisite release form and did not accept the stock offer. This case arises from EDS' decision not to pay Plaintiff a bonus in 2001, which Plaintiff believes that he earned and had a contractual right to receive.

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.  Choice of Law

The parties disagree as to whether Texas or Illinois substantive law applies to this diversity jurisdiction case. The Employment Agreement contains a governing law provision specifying that any

action relating to it "may" be commenced in Texas and "shall be governed by and interpreted under the laws of Texas." There is an exception for non-compete violations, which are to be governed by the law of the state where the employee's principal company office is located.

Plaintiff argues that Illinois law should apply because the Employment Agreement contains a permissive forum selection clause rather than a choice of law provision. Plaintiff is an Illinois resident, who worked exclusively at the ATK office in Chicago during his employment. In several short footnotes, Defendants contend that Texas law should apply, but primarily rely on Illinois law in their briefs to the Court. Neither party asserts that Texas and Illinois law differ in any material respect with regard to the claims at issue here. To the contrary, Defendants state that "Texas' rules of contract interpretation/construction are not materially different from those of Illinois." Under Seventh Circuit law, "in the absence of a choice of law objection, a district court will apply the substantive law of the forum state." *Kolody v. Simon Marketing Inc.*, 97 C 190, 1998 WL 578527, at *13 (N.D. Ill. 1998). Accordingly, the Court will apply Illinois law in addressing Plaintiff's claims. *See id.*

### III. **MOTION TO STRIKE**

Defendants filed two separate motions to strike portions of Plaintiff's affidavits, supporting and opposition briefs, and Local Rule 56.1(b)(3)(A) responses. Defendants contend that Plaintiff's

affidavits are self-serving and conclusory. One category of Defendants' arguments relate to Plaintiff's use of parole evidence to explain his subjective interpretation of the Employment Agreement, Description, and Acknowledgment. Plaintiff responds that the statements explain his interpretation of the documents meaning and intention, but do not alter, vary, or contradict their plain meaning.

The Court first looks to the language of the Employment Agreement itself. *See Much v. Pacific Mutual Life Ins. Co.*, 266 F.3d 637, 643 (7th Cir. 2001). "If the language unambiguously answers the question at issue, the inquiry is over. In such a case, the intent of the parties must be determined solely from the contract's plain language, and extrinsic evidence outside the 'four corners' of the document may not be considered." *Id.*

At various points in their briefing, both parties implicitly concede that the documents themselves are the best evidence of the parties' intentions, and both parties cite extensively to the Employment Agreement, Description, and Acknowledgment. The Court's review of the Employment Agreement reveals that it is clear and unambiguous. The Employment Agreement contains an integration clause specifying that it "supercedes and prevails over all other prior agreements, understandings . . . whether oral or written, with respect to the subject matter herein." This is clear evidence that "the parties desire the contract to be interpreted solely according to the language used in the final agreement." *Much*, 266 F.3d at 644. Additionally, the Description and Acknowledgment are documents that

are also unambiguous and clear. Therefore, the Court need not, and did not, look to the parties' subjective interpretations or other parole evidence in construing the documents at issue here. Accordingly, Defendants' motion to strike is denied as moot on these grounds.

Defendants also object to Plaintiff's citation to portions of depositions taken by EDS during arbitration hearings as a violation of the parties' confidentiality clause. The clause states that "[n]either party shall disclose any information or evidence adduced by the other in the arbitration proceedings . . . unless compelled to do so by law." Plaintiff responds that he was compelled by FED R. CIV. P. Rule 56(e) to produce the depositions because they demonstrate that certain of Defendants' Local Rule 56.1(a) statements are false. The Court notes that a significant portion of the documents in this case were submitted pursuant to a protective order under seal so as to protect confidentiality. To the extent that the responses and supporting deposition documentation are material, Defendants' motion to strike on this ground is denied.

Defendants' remaining arguments relate to allegedly speculative, hearsay, or are otherwise inadmissible statements. In ruling on the parties' motions for summary judgment, the Court considers only relevant, material facts. *See Gizaw v. Ill. Dept. of Public Aid*, No. 02 C 5862, 2004 WL 421958, at *4 (N.D. Ill. Feb. 13, 2004). The Court disregards all conclusory, unsupported, hearsay, or otherwise inadmissible portions of affidavits and the parties' Rule 56.1

statements. Therefore, to the extent Defendants' move to strike on such grounds, the motions are denied as moot.

## IV. **SUMMARY JUDGMENT MOTIONS**

### A. Breach of Contract against EDS

Both parties move for summary judgment on Count I for breach of contract against EDS for failing to pay Plaintiff a 2001 EBP bonus. Plaintiff first contends that the EBP constitutes one of the "Company's performance compensation arrangements" under his Employment Agreement because he was selected to participate in the 2001 EBP. Plaintiff next appears to argue that the Description and Acknowledgment constituted an enforceable contract and gave Plaintiff a contractual right to payment of an "earned" bonus calculated pursuant to the formula in the Description. Plaintiff further argues that EDS did not have "the discretion to deny the promised compensation after the expiration of the applicable contract term, no matter who makes such a decision." Finally, Plaintiff contends that any permissible discretion was not exercised pursuant to its terms for CEO Brown to deny benefits.

Defendants move for summary judgment on this claim by first arguing that EDS is not a party to Plaintiff's Employment Agreement, and the parties did not amend the contract to add or substitute EDS as a party. Second, Defendants argue that the EBP is a plan description and not an enforceable contract. Finally, Defendants contend that even if EBP was an enforceable contract, EDS followed the terms of the EBP in denying Plaintiff a bonus.

It is undisputed that EDS is not a party to Plaintiff's Employment Agreement with ATK. The Employment Agreement, which requires amendment by written instrument signed by both parties, has not been altered to add or substitute EDS. The Employment Agreement specifies that Plaintiff would be eligible to participate in *ATK's* "performance compensation arrangements." It is undisputed that the EBP is EDS' plan, not ATK's. However, even assuming that Plaintiff is correct that the EBP became a "performance compensation arrangement" under the terms of his Employment Contract by virtue of his selection by EBP, his breach of contract claim would fail for the following reasons.

First, by its own terms, the EBP is not an enforceable contract. The Description provides that it is a discretionary plan: "the method of calculating award payments . . . and *all other terms, conditions and aspects of the EBP or its application* . . . are determined by [EDS'] CBC in its sole discretion and may be changed by the CBC . . . at any time and for any reason. . . ." (emphasis added). The Description also contains a disclaimer stating that it is only a guideline, not an employment contract, and that EDS retained the right to "right to change, modify, suspend, interpret, or eliminate any provision in this publication, at any time, with or without notice." Further, the Acknowledgment expressly provides that the EBP is a discretionary plan, and participation in the EBP does not constitute an acquired right. When a party "retains the right to modify or cancel the Plan at any time without prior notice . . . Such

a statement is an effective disclaimer to negate any possible promissory intent." See *Rakos v. Skytel Corp.*, 954 F. Supp. 1234, 1238 (N.D. Ill. 1996)(holding that an executive compensation plan "did not create an enforceable contract as a matter of law because it did not contain a clear right to bonus commissions").

Further, even if the EBP was an enforceable contract as to Plaintiff, the Court concludes that Defendants properly exercised their discretion to deny Plaintiff a bonus. Under the express terms of the Description, the terms of the EBP could be changed by the CBC "or its designee at any time and for any reason the CBC deems appropriate." It is undisputed that on December 4, 2001, the CBC designated EDS CEO Brown as its designee and approved a resolution to give Brown the authority "to reduce or increase such awards or any portion of such awards below or above the levels contemplated by the EBP if . . . [he] determines that such a variation from the terms of the EBP is appropriate with reference to a particular individual in light of unusual or special circumstances."

Brown testified that he made the decision to deny the bonus to the ATK executives based on several factors. First, he testified that ATK had an "exceptionally bad year" and did not meet its performance goals set by EDS. Brown also testified that in denying the bonuses, he considered the fact that the majority of top ATK executives were OBP participants and did not receive bonuses for 2001. Brown further testified that EDS tried to align "the payout of those top executives with the payout what all their people got, which

was nothing." Brown treated the similarly situated executives of ATK alike. The only ATK executive to receive a bonus was an individual who worked for EDS for part of the year and ATK for part of the year. ATK's poor financial performance and the fact that no other officers who were responsible for ATK's performance got a bonus certainly could constitute a "special circumstance" justifying a variance from the EBP terms. Whether or not the parent company EDS had a profitable year does not undermine these considerations.

Plaintiff contends that Ostermann, not Brown, improperly made the decision to deny his bonus based upon Ostermann's memorandum. However, Ostermann testified Brown made the decision and that his statement in the memorandum was an attempt to take ownership of the decision as it related to ATK executives because he was ATK's CEO. Brown testified that he ultimately made the decision to deny bonuses after consulting with Ostermann and others. Plaintiff also argues that CBC did not approve Brown's actions. This is unsupported by the record as the CBC approved Brown's decision to deny a bonus to Ostermann, ATK's CEO. Further, it is irrelevant because, as the Description expressly permitted, the CBC made Brown its designee to make bonus decisions for the 2001 EBP. Accordingly, even if the EBP was an enforceable contract, EDS had the discretion to deny bonuses under the EBP and Plaintiff's breach of contract claim against EBP fails. Therefore, Defendant's motion for summary judgment is granted and Plaintiff's motion for partial summary judgment is denied on Count I.

## B. Unjust Enrichment and Promissory Estoppel against EDS

In Count II, Plaintiff alleges that he "performed services for the benefit of EDS and ATK . . . and forfeited participation in the ATK bonus program in reliance on the promise that he would receive a 2001 bonus from EDS pursuant to the EBP." He further contends that EDS' retention of his 2001 EBP bonus was a violation of "fundamental principles of justice, equity and good conscience. . . ." Defendants move for summary judgment on this claim arguing that Plaintiff received his full salary of $322,500 in 2001 and he was a party to an express employment agreement. Plaintiff did not respond to Defendants' arguments and appears to have abandoned the claim. The Court notes that even if the unjust enrichment claim was colorable, "the total absence of argument . . . would waive consideration of the issue." *Volovsek v. Wisconsin Dept. of Agr.*, 344 F.3d 680, 689, n.6 (7th Cir. 2003).

Further, Counts II is without merit. On Count II, the Seventh Circuit has held that "[u]nder Illinois law, a plaintiff may not state a claim for unjust enrichment when a contract governs the relationship between the parties." *Firsto Community Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). Because the other ATK officers similarly did not receive a bonus, Plaintiff has not demonstrated that his own failure to receive a bonus "violate[d] the fundamental principals of justice, equity, and good conscience." *HPI Health Care Servs. Inc. v. Mt. Vernon Hosp.*

*Inc.*, 545 N.E.2d 672, 679 (Ill. 1989). Accordingly, summary judgment is granted in favor of Defendants on Count II.

Count III for promissory estoppel against EDS also fails as a matter of law. Plaintiff bases the claim on his contention that EDS promised to pay Plaintiff a bonus based upon the table in the Description, Plaintiff relied on the promise and forfeited participation in the OBP, and EDS failed to pay the earned bonus. Defendants respond that the Description's discretionary language prevents Plaintiff from arguing that EDS promised to pay him a bonus and that he cannot demonstrate reasonable or detrimental reliance. As with Count II, Plaintiff failed to respond to Defendants' arguments and appears to have conceded the claim. Additionally, it is clear that Defendants did not promise to pay a bonus, as the EBP was expressly discretionary. *See Stark v. PPM Am, Inc.*, 354 F.3d 666, 672 (7th Cir. 2004)("bonuses, as the name implies, were not guaranteed"). Plaintiff cannot demonstrate reasonable reliance or detrimental reliance where no ATK officers received a bonus under the OBP or the 2001 EBP. Accordingly, Defendants' motion for summary judgment is granted on Count III.

### C. Breach of Contract against ATK

Both parties also moved for summary judgment on Count IV for breach of contract against ATK. Plaintiff alleges that ATK adopted the 2001 EBP as its "performance compensation agreement" under his Employment Agreement, and breached it by failing to pay Plaintiff his 2001 EBP bonus. Plaintiff states, "If ATK selects the performance

compensation arrangement, then ATK is bound to pay in the event of a breach." Defendants respond that ATK did not breach the Employment Agreement. EDS, not ATK, selected Plaintiff for the EBP, which was not an ATK "performance compensation arrangement." Defendants also assert that there could be no breach because Plaintiff fully participated in the EBP.

The Employment Agreement provided Plaintiff with an annual salary and "<u>eligibl[ity] to participate</u> in the Company's performance compensation arrangements, as may be in effect from time to time." (emphasis added). ATK paid Plaintiff his $322,500 in annual salary in 2001. ATK had a performance compensation arrangement in place in 2001 -- the OBP – which Plaintiff participated in prior to 2001. The OBP did not pay bonuses to participants in 2000 or 2001. EDS, not ATK, extended an invitation for Plaintiff to participate in EDS' EBP in 2001, which was a plan organized, run, and managed by EDS. As noted by the Plaintiff, the Description provides that bonuses, if any, will be made in cash and EDS stock and will be paid by EDS. While Plaintiff is correct that he could not participate simultaneously in both the EBP and the OBP, there is no evidence in the record to suggest that if he had elected to decline the EBP then he would have been ineligible for the OBP in 2001. To the contrary, Plaintiff bases his promissory estoppel claim on his supposed forfeiture of OBP participation based on EDS' alleged promises.

Plaintiff received and read the Description, signed the Acknowledgment, and fully participated in the EBP in 2001. ATK

fulfilled its obligations under Plaintiff's Employment Agreement because Plaintiff was eligible to participate. Although Plaintiff argues that by working throughout 2001 he was guaranteed an "earned" bonus that vested pursuant to the EBP's terms, he ignores the express and unambiguous discretionary language of the EBP. The Court therefore concludes that ATK did not breach Plaintiff's Employment Agreement. Defendants' motion for summary judgment is granted on Count IV, and Plaintiff's motion for summary judgment is denied on Count IV.

### IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Defendants' Motions to Strike are **DENIED** in part, and **DENIED AS MOOT** in part.

2. Plaintiff's Partial Motion for Summary Judgment is **DENIED**.

3. Defendants' Motion for Summary Judgment is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: June 28, 2005